## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY R. WERNER, | |
| Plaintiff, | |
| v. | C.A. No. 20-1176-LPS |
| HIVE MEDIA GROUP, LLC, | |
| Defendant. | |

Aman K. Sharma, IGWE & SHARMA, LLC, Wilmington, DE

Bruce Bellingham, SPECTOR GADON ROSEN VINCI, P.C., Philadelphia, PA

      Attorneys for Plaintiff

Chad M. Shandler and Renée Mosley Delcollo, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

J. Matthew Williams, MITCHELL SILBERBERG & KNUPP LLP, Washington, DC

      Attorneys for Defendant

### **MEMORANDUM OPINION**

August 18, 2021
Wilmington, Delaware

STARK, U.S. District Judge:

Plaintiff Jeffrey R. Werner sued Defendant Hive Media Group, LLC ("Hive") for copyright infringement.   Hive moves to transfer the case to the Southern District of California. For the reasons explained below, the Court will grant Hive's motion.

## BACKGROUND

Plaintiff Jeffrey R. Werner is a resident of Los Angeles, California.   (D.I. 1 ("Compl.") ¶ 2)   He has over 35 years of experience as a professional photographer, and his photographs have appeared in a variety of publications.   (*Id.* ¶ 10)   Werner has an "outsider art" reputation, and some of his work has included depictions of "exotic animals, celebrities in their homes, remote aboriginal peoples, sideshow eccentrics, and people who have overcome incredible obstacles."   (*Id.* ¶ 11)   Werner retains the copyrights in many of his photographs.   (*See, e.g.*, *id.* ¶ 2)

Defendant Hive Media Group, LLC is a Delaware limited liability company with a principal place of business in Carlsbad, California.   (*Id.* ¶ 3)   Hive owns and operates a variety of websites that publish news stories, including trend-chaser.com, buzznet.com, bavardist.com, giveitlove.com, ricklaxpresents.com, auntyacid.com, and japacrunch.com (collectively, the "Websites").   (*See id.*)[1]

This case involves sets of photographs depicting three different subjects: (i) Sydney Smith, who has been called the "Giraffe Woman" because of her attempt to elongate her neck using rings; (ii) a goat named "Goatee," who went surfing at Pismo Bay, California; and

---

[1] Werner originally named Kipzo, LLC ("Kipzo") as another defendant because he believed that Kipzo operated trend-chaser.com.   (*See* Compl. ¶ 4)   The parties later agreed that Kipzo is not a proper party in this case and stipulated to its dismissal.   (D.I. 19)

1

(iii) Bruce Campbell, who turned a Boeing 727 into his house in Hillsboro, Oregon.   (*Id.* ¶¶ 12, 28, 34; *see also*, *e.g.*, D.I. 1-1 at #144)   Werner registered his copyrights in the photographs of all three subjects with the U.S. Copyright Office between 2012 and 2016.   (D.I. 1-1 at #14-15 (VAu 1-253-880 for "Giraffe Woman Stills"), #16-17 (VAu 1-276-595 for "Giraffe Woman Without Rings"), #87-88 (VA 1-803-445 for "Surfing Goat Pismo"), #93-94 (VA 1-917-856 for "Airplane home - Stills"))

According to Werner, Hive directly infringed his registered copyrights in the photographs by including copies of the photographs in news stories on Hive's various websites.   (Compl. ¶ 48)   Werner also claims that Hive is liable for willful infringement.   (*Id.* ¶ 52)   If Hive is not liable for direct copyright infringement, Werner alternatively asserts that Hive is liable for vicarious and/or contributory copyright infringement.   (*Id.* ¶¶ 58-62)   Werner contends that there have been a total of 66 instances of copyright infringement involving the relevant photographs.   (D.I. 1-1 at #225-27)   He particularly alleges that Hive has "committed acts of direct and indirect infringement in [the] District [of Delaware] by displaying infringing works in Delaware."   (Compl. ¶ 9)

On December 1, 2020, Hive moved to transfer this case to the Southern District of California.   (D.I. 10)   The motion is fully briefed.   (D.I. 11, 12, 13, 17, 18)

## LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   This statutory provision provides district courts with discretion to adjudicate transfer motions according to "individualized, case-by-case

2

consideration[s] of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,

29 (1988) (internal quotation marks omitted).

Unless the balance of convenience strongly favors transfer, the plaintiff's choice of forum

should ordinarily prevail. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

Thus, "a transfer is not to be liberally granted." *Id.* (internal quotation marks omitted). The

deference afforded to a plaintiff's choice of forum will ordinarily apply, as long as the plaintiff

has selected the forum for some legitimate reason. *See, e.g.*, *Medtronic, Inc. v. Boston Sci.*

*Corp.*, 587 F. Supp. 2d 648, 654 (D. Del. 2008). Accordingly, "transfer will be denied if the

factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc.*

*v. Vascular Sols., Inc.*, 2010 WL 3037478, at *2 (D. Del. July 30, 2010).

Although there is no "definitive formula" for assessing a transfer motion, courts typically

consider a series of private and public interest factors. *Jumara v. State Farm Ins. Co.*, 55 F.3d

873, 879 (3d Cir. 1995). The private factors include: (1) "plaintiff's forum preference as

manifested in the original choice," (2) "the defendant's preference," (3) "whether the claim arose

elsewhere," (4) "the convenience of the parties as indicated by their relative physical and

financial condition," (5) "the convenience of the witnesses – but only to the extent that the

witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books

and records (similarly limited to the extent that the files could not be produced in the alternative

forum)." *Id.*

The public factors include: (1) "the enforceability of the judgment," (2) "practical

considerations that could make the trial easy, expeditious, or inexpensive," (3) "the relative

administrative difficulty in the two fora resulting from court congestion," (4) "the local interest

3

in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80.

## DISCUSSION

There is no dispute that Werner could have brought his case against Hive in the Southern District of California. (*See* D.I. 17 at 3 n.2)   The Court's decision therefore turns on its weighing of the various private and public factors.

## I.      The Private Factors Favor Transfer

The Court must first determine how much deference to give Werner's choice of forum. *See Jumara*, 55 F.3d at 879.   Typically, a plaintiff's choice of forum is a "paramount consideration."   *Shutte*, 431 F.2d at 25.   Werner's choice to sue in Delaware is based on legitimate and rational reasons, including the fact that Hive is a Delaware business entity and that this Court has great familiarity with intellectual property matters.   (*See, e.g.*, D.I. 17 at 5) "Plaintiff's decision to sue in Delaware is rational and legitimate, so its choice of forum is entitled to, at minimum, significant deference."   *FG SRC LLC v. Xilinx, Inc.*, 2021 WL 495614, at *3 (D. Del. Feb. 10, 2021) (internal quotation marks omitted).   Nevertheless, the weight to be accorded to Werner's forum preference is somewhat lessened by the fact that he is a resident of California without any apparent connection to Delaware.   (*See* Compl. ¶ 2; *see also Express Mobile, Inc. v. Web.com Grp., Inc.*, 2020 WL 3971776, at *2 (D. Del. July 14, 2020) (noting that even "when a plaintiff has a principal place of business outside Delaware or has no connection to Delaware other than its choice to sue here . . . [the] plaintiff's choice will still be the most important factor [in the overall balancing]," though "it will not dominate the balancing to the same extent as it otherwise might"))   Werner's preference favors retaining this case in this

Court, as the plaintiff's preference always does, but that factor alone does not defeat Hive's transfer motion.

Defendant's forum preference, of course, weighs in favor of transfer, as it always does. *See Jumara*, 55 F.3d at 879; *see also Nalco Co. v. AP Tech Grp. Inc.*, 2014 WL 3909114, at *1 (D. Del. Aug. 8, 2014) (noting Delaware corporation's preference to litigate elsewhere and ultimately transferring case). "Hive has approximately 43 employees in its California offices, where all but three of its U.S.-based employees and all of its records are located. Hive has no employees or any other presence in Delaware, other than a designated agent for service and the presence of certain corporate documents in the state." (D.I. 11 at 3) (internal citations omitted) Hive's desire to transfer this case to the district where Hive has its principal place of business is both legitimate and rational. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, 2017 WL 3189005, at *9 (D. Del. July 6, 2017), *objections overruled*, 2017 WL 3225983 (D. Del. July 31, 2017). A defendant's forum preference does not, however, receive as much weight in the transfer analysis as the plaintiff's choice of forum. *See, e.g.*, *Express Mobile*, 2020 WL 3971776, at *2.

The events underlying this case did not occur in Delaware, while many of them did occur in southern California. Hive is located in Carlsbad, California, and it is from there that Hive operates the relevant websites. (*See* Compl. ¶ 3; *see also* D.I. 18 at 4)[2] As Hive writes:

---

[2] The online articles containing the alleged instances of copyright infringement were accessible throughout the United States, which may not support a connection to a particular forum. *See, e.g.*, *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012) ("[W]hen the defendant in a patent infringement action operates on a national or global level, this factor is typically neutral.").

"Decisions regarding what ultimately is posted on the Websites and decisions regarding general policies and procedures for postings, including protocols for use of photographic content, are all made at Hive's headquarters in southern California."   (D.I. 11 at 3)   Hive's statement is supported by an uncontradicted declaration.   (D.I. 13 ¶ 10)   This factor favors transfer.

Litigating this case in California would be more convenient for both parties.   Werner lives in Los Angeles.   (Compl. ¶ 2)   Hive's offices are nearby in Carlsbad, and almost all its employees live and work in that area.   (*See* D.I. 13 ¶ 4)   Except for one Hive employee in Illinois (who, if needed in court, will need to travel to either Delaware or California), all of Hive's potential employee-witnesses work in the Southern District of California.   (*Id.* ¶ 9)   If this case is transferred, the parties and witnesses will be able to attend proceedings close to home, and any travel will be significantly reduced.

More needs to be said with respect to this "convenience of the parties" factor.   It is true that Hive does not merely operate regionally in an area that excludes Delaware.   It is also true that Hive has failed to show that litigating in Delaware – the state in which Hive voluntarily elected to form itself – will impose any unique or unusual hardship on Hive.   These realities detract from the strength of Hive's showing.   *See, e.g.*, *Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 477 (D. Del. 2011) ("When transfer is sought by a defendant with operations on a national or international scale, that defendant must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations.") (internal quotation marks omitted); *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001) ("[A]bsent some showing of a unique or unusual burden, a company should not be

6

successful in arguing that litigation in its state of incorporation is inconvenient.").   Even so, these realities do not amount to a dispositive failing.

Furthermore, it appears to be undisputed that Werner has filed at least 39 copyright infringement lawsuits against various defendants throughout the country, with a majority of them having been filed in California and none having been previously filed in Delaware.   (*See* D.I. 11 at 2) (citing D.I. 12 ¶¶ 4-7)[3]   The record reveals no reason to believe that litigating this action in California would be inconvenient for Werner in any respect, particularly if Werner were represented by the same counsel who previously represented him in prior copyright actions in California.   *See generally Genetic Techs. Ltd. v. Natera, Inc.*, 2014 WL 1466471, at \*1 (D. Del. Apr. 15, 2014) (concluding that plaintiff's filing of prior suits involving same patent in Northern District of California "effectively conced[ed] the convenience of the Northern District"); *Fortinet, Inc. v. FireEye, Inc.*, 944 F. Supp. 2d 352, 355 (D. Del. 2013) (transferring patent action because, among other things, plaintiff had previously "availed itself of the jurisdiction of Northern California on at least five occasions").

Overall, the Court is persuaded that the convenience of the parties favors transfer.[4]

The convenience of the witnesses is a neutral factor, as the party witnesses (including Hive employees) will have to be made available for trial in whichever district this case proceeds,

---

[3] Werner did not dispute these contentions in his answering brief.

[4] Werner argues that this factor tips in his favor because Hive has more financial resources than he does and because Hive voluntarily chose to incorporate under Delaware law. (D.I. 17 at 9-10)   While these realities likely lessen the inconvenience to Hive in litigating here, and while they certainly reduce the weight that the Court accords this factor, the fact remains that litigating in California will be more convenient for both parties than litigating in Delaware.

and Hive has not identified any non-party witnesses (such as former employees) who are within

the subpoena power of the district court in the Southern District of California and who may not

voluntarily travel to Delaware.

Finally, the location of relevant documents favors transfer, although this factor is

accorded little weight.   In infringement cases, most of the relevant documents come from the

alleged infringer.   *See, e.g.*, *Intell. Ventures I*, 797 F. Supp. 2d at 485 (citing *In re Genentech,*

*Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).   Hive's records, including any documents about the

contents of its websites, are located at Hive's offices in California.   (D.I. 13 ¶¶ 4, 11)   While the

location of Hive's records therefore favors transfer, "technological advances . . . have

significantly reduced the burden of transferring evidence, and, consequently, have greatly

diminished this as a factor in a transfer analysis."   *Intell. Ventures I*, 797 F. Supp. 2d at 485.

## II.     The Public Factors Favor Transfer

Four of the six public interest factors are neutral and do not affect the transfer analysis.

The parties agree that "the enforceability of the judgment" and "the familiarity of the trial judge

with the applicable state law in diversity cases" do not affect the outcome.   (D.I. 11 at 9 n.2; D.I.

17 at 12-13)   As for "administrative difficulty in the two fora resulting from court congestion,"

the parties cite different statistics for how quickly this case might proceed in the two fora but

ultimately agree that this factor is neutral.   (D.I. 11 at 11; D.I. 17 at 12; D.I. 18 at 7 n.5)

Finally, although Werner does not address "the public policies of the fora" (*see* D.I. 17 at 12-13),

Hive acknowledges that the factor is immaterial (*see* D.I. 11 at 9 n.2), and the Court agrees.

The other two public interest factors favor transfer, but only slightly.   Practical

considerations might make the Southern District of California an easier and less expensive

venue, as transferring the case would relieve one party of the obligation to retain and pay local

8

counsel.   Hive's current lead counsel works in the Washington, DC office of Hive's preferred

law firm, but other lawyers from the firm in California who are admitted to the Southern District

would likely handle this case if it were transferred.   (D.I. 11 at 10 & n.3)   Upon transfer, Hive

would no longer need to pay Delaware counsel and would no longer need separate lead and local

counsel.   Werner's lead counsel is located in Philadelphia, PA.   (D.I. 17 at 12)   After transfer,

then, Werner would still need to pay local counsel (in California), and its lead counsel in

Philadelphia would occasionally be required to travel across the country.

The Southern District of California has an interest in deciding a local controversy at

home.   This case involves a dispute between a photographer who lives in California and a

company that has its headquarters in California and operates the relevant websites from

California.   Werner's accusation that Hive has a business model that encourages willful

copyright infringement (*see* Compl. ¶ 52) calls into question the reputation of individuals who

live and work in the Southern District of California.   *See, e.g.*, *In re Hoffmann-La Roche Inc.*,

587 F.3d 1333, 1336 (Fed. Cir. 2009) (ordering transfer of patent case with allegations

concerning business conduct in transferee forum's community).   The national accessibility of

Hive's websites does not diminish the Southern District of California's local interest in the

underlying facts.   Additionally, as Hive points out, Werner is accusing a media company of

copyright infringement, and "California is widely-known as . . . one of the entertainment capitals

of the world."   (D.I. 11 at 10)   While Delaware has an interest in the conduct of its business

organizations, this case involves only a single such entity (Hive).   For all these reasons, this

factor favors transfer.

9

### III.    Under The Totality Of Circumstances, Hive Has Met Its Burden

The only connection between this case and this forum is that Hive is a business organization created under Delaware law.   The only factor favoring keeping this case in Delaware is Werner's forum preference, which is the consideration that is accorded the most weight.   All the other pertinent private and public interest factors, however, favor transfer: Hive's forum preference, where the claim arose, the convenience of the parties, the location of books and records, practical considerations, and local interest.   The remaining factors are neutral or irrelevant.

In sum, in this copyright infringement dispute between a California resident (who has frequently litigated copyright cases in California) and a Delaware business having no physical presence in Delaware – and having its headquarters, nearly all its employees, and all its books and records in California, where it also allegedly committed acts of infringement – the balance of convenience strongly favors transfer.[5]   Hive has met its burden, and the Court will transfer this action to the Southern District of California.   *See generally Joseph v. Buffalo News, Inc.*, 2017 WL 3314006, at *1 (D. Del. Aug. 3, 2017) (transferring copyright suit against Delaware corporation after finding that, "[o]ther than Plaintiff's choice of forum, there is no factor favoring keeping the case here").

---

[5] *See also* D.I. 11 at 1 ("Plaintiff is based in southern California, has no apparent connection to Delaware, and has been fully willing to litigate in the Southern District of California in the past, having filed multiple lawsuits there as well as many in the adjoining Central District of California.").

**CONCLUSION**

For the foregoing reasons, Hive's motion to transfer venue to the Southern District of California (D.I. 10) will be granted.   An appropriate order follows.